DISCIPLINARY COUNSEL *v.* FORD.

**[Cite as *Disciplinary Counsel v. Ford,* 133 Ohio St.3d 105, 2012-Ohio-3915.]**

*Attorneys—Misconduct—Failing to act with reasonable diligence in representing a client and failing to keep a client reasonably informed of the status of a matter—Failing to cooperate with a disciplinary matter—Two-year suspension, six months stayed on conditions.*

(No. 2011-2042—Submitted January 18, 2012—Decided September 5, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 11-061.

_____

**Per Curiam**.

**{¶ 1}** Respondent, George Cook Ford III of Norwalk, Ohio, Attorney Registration No. 0011982, was admitted to the practice of law in Ohio in 1977.

**{¶ 2}** On May 26, 2011, relator, disciplinary counsel, filed a three-count complaint alleging that Ford had neglected one client's legal matter, failed to provide competent representation to a second client, charged the second client an illegal or clearly excessive fee, failed to reasonably communicate with both clients, and failed to cooperate with the resulting disciplinary investigations, and that this conduct was prejudicial to the administration of justice. Although the Board of Commissioners on Grievances and Discipline served the complaint by certified mail at the address on file with the Office of Attorney Services, Ford did not file an answer. Consequently, relator moved the board for default judgment.

**{¶ 3}** The board appointed a master commissioner, who granted the default motion and found that relator had proven all but one of the allegations in his complaint by clear and convincing evidence. Having considered the findings of misconduct, the applicable aggravating and mitigating factors, and this court's

precedent, the master commissioner adopted relator's proposed sanction—a two-year suspension, with six months stayed on the condition that Ford make restitution to the two affected clients.

{¶ 4} The board adopted the master commissioner's findings of fact and misconduct and its recommended sanction. We adopt the board's findings of fact and misconduct and suspend Ford for two years, with six months stayed on the conditions that he make restitution to the individuals who paid his clients' fees and that he commit no further misconduct.

## Misconduct

### Count One—Ellie Justice

{¶ 5} Ellie Justice retained Ford in December 2005 to handle her divorce. The divorce became final on June 29, 2007. The magistrate's decision and agreed judgment entry, which was signed by the judge, specified that Justice's ex-husband was to receive the jointly owned real property and that Justice was to receive approximately $90,000 from her ex-husband's stock ownership and pension plans. Pursuant to the agreed entry, Justice was to prepare and submit a qualified domestic-relations order ("QDRO") to effectuate the division of the stock ownership and pension plans.

{¶ 6} Justice signed a quitclaim deed to transfer the real property to her ex-husband during the summer of 2007, but Ford did not forward the executed quitclaim deed to the ex-husband's counsel. Nor did he respond to counsel's multiple requests for the deed or his inquiries about the QDRO. Consequently, on July 28, 2008, the ex-husband's counsel moved the court for an entry to convey the real property, and the court granted the motion the same day.

{¶ 7} On January 14, 2009—nearly 19 months after the divorce became final—Ford wrote to the ex-husband's counsel to inform him that he was completing the QDRO. Shortly thereafter, Justice's friend, Sharleen Williams,

paid Ford $400 to prepare the QDRO. Ford forwarded the money to QDRO Consultants, and the completed document was sent to Ford on April 14, 2009.

{¶ 8} Justice called Ford more than 50 times to discuss the status of the settlement and QDRO during the three years following her divorce. On the rare occasions when she was able to speak with Ford, he advised her that he was working on her case or that he would call her back, which he never did. In March 2010, Justice sent letters to Ford and the judge presiding over her divorce to complain about Ford's lack of communication and failure to complete her representation. Although the judge sent Ford a letter instructing him to contact Justice and to take care of the outstanding QDRO, as of the date the motion for default judgment was filed, Ford had not filed the QDRO.

{¶ 9} The master commissioner and board found that Ford's conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice). We adopt these findings of fact and misconduct.

### Count Two—Darryl Moore

{¶ 10} In August 2007, Darryl Moore was indicted on ten federal criminal charges including conspiracy, money laundering, mortgage fraud, and wire fraud. He later pleaded guilty to five of the charges, and the government dismissed the other five counts. In July 2008, he was sentenced to 53 months in prison and was sent to the Elkton Federal Correctional Institution in Columbiana County, Ohio.

{¶ 11} Ford's former assistant, Thomas Root, was also incarcerated at Elkton and referred Moore to Ford for legal assistance. In May 2009, Ford agreed to represent Moore for a flat fee of $5,000. Based upon Moore's affidavit, the master commissioner and board found that Moore's friend, Claude Carson, paid

Ford at least $3,250 on Moore's behalf. We find, however, that in an August 4, 2010 letter to Moore, Ford admitted that he received $3,500 from Carson.

{¶ 12} On June 26, 2009, Moore wrote a letter to Ford setting forth his understanding that Ford would file a motion to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. 2255. Moore noted that there are strict deadlines for filing such motions and implied that his deadline would fall on or about July 21, 2009. When he did not hear from Ford by July 20, 2009, he filed a pro se motion to vacate his sentence, but the government moved to strike his motion because it exceeded the allowable page limit. Moore opposed the motion to strike but also submitted a shortened version of his motion to vacate and sent copies of the documents to Ford. While his response in opposition to the motion to strike was filed on August 4, 2009, his revised motion to vacate was never filed and did not appear on the docket.

{¶ 13} The court granted the government's motion to strike and gave Moore until October 19, 2009, to file a conforming motion. Ford reviewed Moore's revised motion to vacate and was satisfied that it complied with the court's order, so he did not file a revised motion on Moore's behalf—even though the docket did not show that a revised motion had been filed. Because a revised motion was not filed by the deadline, the court dismissed the action. Ford later moved the court for reconsideration and for relief from judgment, but his motions were denied.

{¶ 14} In April 2010, Moore requested a refund of the fee paid on his behalf. When he did not receive a refund, he sent Ford a letter in July 2010. Ford replied on August 4, 2010, and refused to refund any of the $3,500 that he had received on Moore's behalf.

{¶ 15} The master commissioner and board found that Ford's conduct violated Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), 1.4(a)(3), and 8.4(d), and the master commissioner dismissed for

4

insufficiency of the evidence an alleged violation of Prof.Cond.R. 1.5 (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee). We adopt the board's findings of fact and misconduct with one exception—because Ford admitted in his letter to Moore that he had received $3,500 from Claude Carson, we find that relator has proven payment of that amount by clear and convincing evidence.

### *Count Three—Failure to Cooperate*

**{¶ 16}** Upon receipt of grievances from clients Ellie Justice and a second client, relator sent Ford two letters of inquiry by certified mail. Ford signed for those letters on May 24, 2010, and called four days before his responses were due to request an extension of time to respond. Relator granted that request, and two others, for an extension of time, but Ford failed to respond by the last deadline— July 2, 2010.

**{¶ 17}** On July 8, 2010, Mary Jackson, who identified herself as Ford's assistant at the Huron County Public Defender's office, called to advise relator that Ford had been hospitalized on July 7, 2010, having suffered from a possible stroke. Relator called Ford during the second week of August 2010 to inquire about the grievances. Ford stated that he had just returned to work on Friday, August 6, 2010, and that he was working limited hours until he was fully recovered. Nevertheless, he advised relator that he would respond to the Justice and Francis grievances by "a week from next Friday." Ford did respond to those grievances approximately one month later, but his responses were incomplete.

**{¶ 18}** Relator sent Ford additional questions regarding the Justice and Francis grievances around the same time that relator received Darryl Moore's grievance. Ford called in October 2010 to notify relator that he had retained counsel to represent him in the disciplinary process. Ford's counsel provided some additional information in the Justice and Francis matters and an initial response to the Moore grievance. Although relator requested additional

information and subpoenaed Ford for a deposition, Ford did not appear for the deposition and has not provided any additional information.

{¶ 19} Relator's investigation revealed that Francis's grievance did not warrant any disciplinary action. Upon determining that formal disciplinary action was warranted in the Justice and Moore matters, relator sent two letters notifying Ford of his intention to file a complaint with the board and enclosed a draft complaint with each. Ford did not respond to either letter and, although it was served upon him, he has failed to file an answer to the formal complaint.

{¶ 20} Based upon these facts, the master commissioner and board found that Ford violated Prof.Cond.R. 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation) and 8.4(d) and Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate with a disciplinary investigation).

**Sanction**

{¶ 21} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10. *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 22} As aggravating factors in this case, the master commissioner and board have found that Ford committed multiple offenses, failed to cooperate in the disciplinary process, refused to acknowledge the wrongful nature of his conduct, caused harm to vulnerable clients, and failed to make restitution. *See* BCGD Proc.Reg. 10(B)(1)(d), (e), (g), (h), and (i). The only mitigating factor that they found is the absence of a prior disciplinary record in more than 30 years of practice. *See* BCGD Proc.Reg. 10(B)(2)(a).

**{¶ 23}** Relator has recommended that Ford be suspended for two years with no more than six months of that suspension stayed on the condition that he refund $400 to Justice and $3,500 to Carson.

**{¶ 24}** The master commissioner and board acknowledge that we have consistently held that neglect of client matters coupled with the failure to cooperate in the ensuing disciplinary investigation warrants an indefinite suspension from the practice of law. *See, e.g., Columbus Bar Assn. v. Torian*, 106 Ohio St.3d 14, 2005-Ohio-3216, 829 N.E.2d 1210, ¶ 17; *Akron Bar Assn. v. Snyder*, 87 Ohio St.3d 211, 212, 718 N.E.2d 1271 (1999); *Disciplinary Counsel v. Boylan*, 85 Ohio St.3d 115, 117, 707 N.E.2d 465 (1999).

**{¶ 25}** Citing several cases in which we tempered that presumptive sanction, however, the master commissioner and board recommend that we suspend Ford for two years, with six months stayed on the condition that he refund $400 to Sharleen Williams, who had made Justice's fee payment, and $3,250 to Claude Carson, who had made Moore's fee payment. *See Disciplinary Counsel v. Hallquist*, 128 Ohio St.3d 480, 2011-Ohio-1819, 946 N.E.2d 224, ¶ 8, 15-16, and *Disciplinary Counsel v. Noel*, 126 Ohio St.3d 56, 2010-Ohio-2714, 930 N.E.2d 312, ¶ 26-27 (each imposing a two-year suspension with six months stayed for an attorney who had neglected two client matters and failed to cooperate in the resulting disciplinary investigation).

**{¶ 26}** Ford has practiced law for more than 30 years without a disciplinary violation, and it appears that his violations in this case may be due, at least in part, to his recent poor health. And on March 26, 2012, Ford notified the Office of Attorney Services that his license to practice law is currently inactive. Having considered Ford's misconduct, the aggravating and mitigating circumstances, and our precedent, we adopt the board's recommended sanction of a two-year suspension with six months stayed on the condition that Ford make restitution to Sharleen Williams and Claude Carson. But because Ford admitted

that he received $3,500 from Claude Carson, we modify the board's recommendation to require restitution of that amount to Carson.

**{¶ 27}** Accordingly, George Cook Ford III is suspended from the practice of law in Ohio for two years from the date of this order, with six months stayed on the conditions that he make restitution of $400 to Sharleen Williams and $3,500 to Claude Carson within 30 days of this order and that he commit no additional misconduct. If Ford fails to comply with the conditions of the stay, the stay will be lifted and he will serve the full two-year suspension. Costs are taxed to Ford.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Karen H. Osmond, for relator.

_____