**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Pickrel,* **Slip Opinion No. 2017-Ohio-6872.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-6872

DISCIPLINARY COUNSEL *v.* PICKREL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Pickrel,* Slip Opinion No. 2017-Ohio-6872.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Two-year suspension with one year stayed on conditions.*

(No. 2017-0225—Submitted April 5, 2017—Decided July 20, 2017.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2016-024.

_____

**Per Curiam.**

**{¶ 1}** Respondent, Patricia Ann Pickrel, of Centerville, Ohio, Attorney Registration No. 0071153, was admitted to the practice of law in Ohio in 1999. Since September 1, 2005, she has been registered as an inactive attorney.

**{¶ 2}** In a June 29, 2016 complaint, relator, disciplinary counsel, alleged that Pickrel violated several professional-conduct rules by knowingly overbilling a

law firm by more than $87,000 for nonattorney document-review services over approximately four years.

{¶ 3} A panel of the Board of Professional Conduct granted the parties' motion to waive the hearing on the matter and adopted their joint stipulations of fact, misconduct, and aggravating and mitigating factors. In addition, the panel adopted the parties' recommended sanction of a two-year suspension with one year stayed on conditions; however, it also recommended that Pickrel serve a two-year period of monitored probation upon reinstatement. The board agreed with the panel's findings and recommendation. We adopt the board's findings of fact and misconduct and suspend Pickrel from the practice of law in Ohio for two years with one year stayed on the conditions recommended by the board.

**Misconduct**

{¶ 4} The parties stipulate that in the fall of 2005, Pickrel became an independent contractor for the law firm of Ulmer & Berne, L.L.P., performing nonattorney document-review services for cases pending in the firm's Cincinnati office. In January 2012, Pickrel began working on a large pharmaceutical project for which she was paid $65 an hour. Due to the nature of the project and the firm's secure website, it was not possible for Pickrel to perform the contracted services of reading, coding, or summarizing documents unless she was logged on to the secure website.

{¶ 5} Approximately twice a month, Pickrel would send a firm associate, Kimberly Beck, an e-mail stating the number of hours she purportedly had spent reviewing, coding, or summarizing documents in the preceding two-week period. The firm logged those hours into a separate system to generate Pickrel's compensation. From January 2012 through November 2015, the firm paid Pickrel $125,209.50.

{¶ 6} On or about December 2, 2015, Beck discovered a discrepancy between the number of hours Pickrel had reported working for the last two weeks

of November 2015 and the number of hours Pickrel had been logged on to the secure website during that period. When notified of the discrepancy, Pickrel stated that the application she had used to track her hours was "all screwed up" and that her hours may have "been inaccurate for the past month possibly." But upon performing a comprehensive audit of the time records from January 1, 2012, through November 15, 2015, the firm discovered that Pickrel had overbilled it by more than $87,000 over four years, with the excess billing accounting for 53 percent to 89 percent of her annual compensation.

{¶ 7} On or about December 10, 2015, Gina Saelinger, the partner in charge of the project, called Pickrel seeking an explanation for her overbilling. At the beginning of the conversation, Pickrel stated that she was a bad record keeper and that she had been having computer problems for the past year, but she ultimately acknowledged her misconduct and requested an opportunity to reimburse the firm for her overbilling. On January 5, 2016, she reimbursed the firm $87,620; no additional restitution is owed.

{¶ 8} The board found that by submitting false time reports to Ulmer & Berne and by making false or misleading statements in an attempt to conceal her misconduct, Pickrel violated Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). Consistent with our decision in *Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21, the board also found that Pickrel's deceitful and dishonest pattern of overbilling the firm over the four-year period—essentially theft—was sufficiently egregious to support a finding that she violated Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

{¶ 9} Although Pickrel was not registered as an active attorney at the time of her misconduct and her conduct did not arise from her practice of law, she remained subject to the Rules of Professional Conduct. *See, e.g.*, *In re Nicotera*,

65 Ohio St.3d 163, 602 N.E.2d 612 (1992) (attorney's inactive status does not preclude discipline); Prof.Cond.R. 8.4, Comment 2 (stating that "[a]lthough a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice" and recognizing that offenses involving dishonesty and breach of trust fall in that category). We therefore adopt the board's findings of fact and misconduct.

**Sanction**

{¶ 10} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), any other relevant factors, and the sanctions imposed in similar cases.

{¶ 11} As aggravating factors, the parties stipulated and the board found that Pickrel acted with a dishonest or selfish motive, engaged in a pattern of misconduct, and committed multiple offenses. *See* Gov.Bar V(13)(B)(2), (3), and (4).

{¶ 12} In mitigation, the parties stipulated and the board found that Pickrel did not have a prior disciplinary record, made a timely, good-faith effort to make restitution or rectify the consequences of her misconduct, made full and free disclosure to the board and demonstrated a cooperative attitude toward the disciplinary process, and voluntarily refrained from practicing law during the pendency of the disciplinary proceeding. *See* Gov.Bar R. V(13)(C)(1), (3), and (4).

{¶ 13} In addition, the board found that Pickrel had established a mitigating mental-health disorder pursuant to Gov.Bar R. V(13)(C)(7) by submitting evidence that (a) she had been diagnosed with dysthymia in January 2016, (b) the disorder had been active for at least two years and had contributed to her misconduct, (c) she had completed 12 sessions with her treating therapist over a period of nine months, and (d) she is able to return to the competent, ethical, and professional

practice of law, though her therapist suggested that she would benefit from working in an office or agency environment where she would have appropriate supervision and guidance.

{¶ 14} The parties stipulate that the appropriate sanction for Pickrel's misconduct is a two-year suspension with one year stayed on the conditions that she engage in no further misconduct and remain in compliance with the two-year contract she had entered into with the Ohio Lawyers Assistance Program ("OLAP") in January 2016. The board adopted the parties' recommended sanction with the additional conditions that Pickrel remain in counseling and follow any OLAP recommendation to extend the duration of her mental-health contract. The board further recommended that she be required to serve a two-year period of monitored probation upon her reinstatement to the practice of law.

{¶ 15} The board acknowledged that we have imposed shorter actual suspensions and even fully stayed suspensions on other attorneys who have engaged in employment-related theft or dishonesty. *See Cincinnati Bar Assn. v. Washington*, 109 Ohio St.3d 308, 2006-Ohio-2423, 847 N.E.2d 435 (imposing a two-year suspension with 18 months conditionally stayed on an attorney who billed multiple insurance companies more than $91,000 for work he had not performed and converted $4,000 in retainer fees to his own use); *Disciplinary Counsel v. Markijohn*, 99 Ohio St.3d 489, 2003-Ohio-4129, 794 N.E.2d 24 (imposing a stayed six-month suspension on an attorney who falsely reported to his law firm and federal and state taxing authorities that he had made required payments to his retirement account when he had not done so); *Disciplinary Counsel v. Grigsby*, 128 Ohio St.3d 413, 2011-Ohio-1446, 945 N.E.2d 512 (imposing a conditionally stayed 18-month suspension with monitored probation on an attorney who used an employer-issued credit card for personal expenses). However, the board believed that the recommended sanction would help to ensure Pickrel's continued

compliance with her OLAP contract and her ability to return to the competent and ethical practice of law.

{¶ 16} Having considered Pickrel's lengthy pattern of dishonest and deceitful billing practices, the applicable mitigating factors, including her contributing mental disorder and her prompt payment of full restitution, and the sanctions we have imposed for comparable misconduct, we agree that a two-year suspension with one year stayed on the conditions recommended by the board is the appropriate sanction in this case.

{¶ 17} Accordingly, we suspend Patricia Ann Pickrel from the practice of law for two years with one year stayed on the conditions that she (1) continue to participate in mental-health counseling with her current therapist or another qualified professional until her treating professional deems that counseling is no longer medically necessary, (2) remain in compliance with her January 7, 2016 OLAP contract and any extension of the contract recommended by OLAP, and (3) engage in no further misconduct. If Pickrel violates any condition of the stay, the stay will be lifted and she will serve the entire two-year suspension. Furthermore, upon Pickrel's reinstatement to the active practice of law following her suspension and registration as an active attorney, she shall serve a two-year period of monitored probation in accordance with Gov.Bar R. V(21). Costs are taxed to Pickrel.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, O'NEILL, and DEWINE, JJ., concur.

FISCHER, J., not participating.

————————————

Scott J. Drexel, Disciplinary Counsel, and Karen H. Osmond, Assistant Disciplinary Counsel, for relator.

Martin A. Beyer, for respondent.

————————————