**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as**
*Disciplinary Counsel v. Engel,* **Slip Opinion No. 2018-Ohio-2988.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-2988

DISCIPLINARY COUNSEL *v.* ENGEL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Engel,* Slip Opinion No. 2018-Ohio-2988.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Two-year license suspension with 18 months of the suspension stayed.*

(No. 2017-1087—Submitted December 6, 2017—Decided July 31, 2018.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2016-030.

_____

**Per Curiam.**

{¶ 1} Respondent, Andrew Mahlon Engel, of Centerville, Ohio, Attorney Registration No. 0047371, was admitted to the practice of law in Ohio in 1990.

{¶ 2} On November 21, 2001, we publicly reprimanded Engel for neglecting a legal matter and attempting to handle it without adequate preparation. *Dayton Bar Assn. v. Engel*, 93 Ohio St.3d 623, 758 N.E.2d 178 (2001). And on

December 22, 2004, we suspended him from the practice of law for two years with six months of the suspension stayed on conditions for intentionally failing to seek the lawful objectives of a client, intentionally failing to carry out a contract of employment, engaging in conduct that adversely reflected on his fitness to practice law, and failing to cooperate in the ensuing disciplinary investigation. *Dayton Bar Assn. v. Engel*, 105 Ohio St.3d 49, 2004-Ohio-6900, 822 N.E.2d 346.

{¶ 3} In an August 3, 2016 complaint, relator, disciplinary counsel, alleged that Engel neglected a single client matter, failed to keep the client reasonably informed about the status of her legal matter and to comply with her reasonable requests for information, failed to promptly refund the unearned portion of his fee, and failed to cooperate in the resulting disciplinary investigation. The parties submitted joint stipulations in which Engel admitted the charged misconduct and agreed that three aggravating factors and four mitigating factors are present.

{¶ 4} A panel of the Board of Professional Conduct conducted a hearing at which it heard testimony from Engel and three character references and viewed the video deposition of Engel's treating psychologist.

{¶ 5} The panel adopted the parties' stipulations and recommended that Engel be suspended from the practice of law for two years with 18 months of the suspension stayed provided that he meet certain conditions before reinstatement and that once reinstated to the practice of law, he serve a two-year period of monitored probation. The board adopted the panel's report and recommendation, with an additional requirement that on seeking reinstatement, Engel must provide an opinion from a qualified healthcare professional that he is able to return to the competent and ethical professional practice of law. Engel objects to the panel's denial of his motion to supplement his posthearing brief and to the board's recommended sanction. For the reasons that follow, we overrule Engel's objections, adopt the board's findings of fact, misconduct, and aggravating and mitigating factors, and suspend Engel from the practice of law for two years with

18 months of the suspension stayed, and we place the recommended conditions on his reinstatement.

**Misconduct**

**{¶ 6}** In April 2015, Dianne Shelton hired Engel to represent her in a consumer- debt action. Engel sent letters to counsel for Shelton's creditor on April 27 and June 22, 2015, but Engel did not respond to Shelton's multiple efforts to reach him or take any other action to settle her debt before she filed a grievance with relator in August 2015.

**{¶ 7}** Engel responded to relator's original letter of inquiry in October 2015 and promised, during a November 19, 2015 telephone conversation with relator, that he would contact Shelton. But he had no contact with Shelton or relator until mid-February 2016. After informing relator that Shelton had agreed to continue his representation and exchanging a few e-mails with Shelton, Engel had no further contact with her until early March—when Shelton told him that she had settled the matter herself. Engel did not respond to relator's letters requesting that he submit proof that he had honored his promise to refund the balance of Shelton's retainer until relator served him with a subpoena for his deposition at the end of May. But even then, he did not provide a copy of the correspondence he had sent to Shelton. The parties stipulated that Engel refunded $50 of Shelton's $500 retainer on May 24, 2016, followed by the remaining $450 on July 11, 2016.

**{¶ 8}** Therefore, the parties stipulated and the board found that Engel violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer's withdrawal from employment), and 8.1(b) and Gov.Bar R. V(9)(G) (both requiring a lawyer to cooperate with a disciplinary investigation).

{¶ 9} We adopt the board's findings of fact and misconduct.

**Recommended Sanction**

{¶ 10} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 11} Here, the board considered Engel's misconduct and adopted the parties' stipulated aggravating factors, which include two instances of prior discipline, the commission of multiple offenses, and Engel's failure to cooperate in the investigative stage of the disciplinary process. *See* Gov.Bar R. V(13)(B)(1), (4), and (5). The board also adopted the parties' stipulations regarding the applicable mitigating factors, including the absence of a dishonest or selfish motive, Engel's eventual full and free disclosure to the board and cooperative attitude toward the disciplinary proceeding, evidence of his good character and reputation, and two qualifying mental disorders—anxiety and depression. *See* Gov.Bar R. V(13)(C)(2), (4), (5), and (7).[1]

{¶ 12} At the disciplinary hearing and in his posthearing brief, Engel agreed that he should be suspended from the practice of law for two years but argued that the entire suspension should be stayed with a requirement that he serve a period of monitored probation. In contrast, relator argued that a two-year suspension with 18 months stayed is the appropriate sanction.

{¶ 13} The board found that there is no case law to support the imposition of a fully stayed suspension under the facts of this case. On the contrary, it recognized that the presumptive sanction for neglect of client matters coupled with

---

[1] For a disorder to qualify as a mitigating factor pursuant to Gov.Bar R. V(13)(C)(7), there must be (a) a diagnosis by a qualified healthcare professional, (b) a causal relationship between the disorder and the misconduct, (c) a sustained period of successful treatment, and (d) a prognosis from a qualified healthcare professional that the attorney will be able to return to the competent, and ethical professional practice of law.

the failure to cooperate in the ensuing disciplinary investigation is an indefinite suspension from the practice of law. *See*, *e.g.*, *Disciplinary Counsel v. Ford*, 133 Ohio St.3d 105, 2012-Ohio-3915, 976 N.E.2d 846, ¶ 24; *Mahoning Cty. Bar Assn. v. DiMartino*, 147 Ohio St.3d 345, 2016-Ohio-5665, 65 N.E.3d 737, ¶ 13.

{¶ 14} But the board also found that we have imposed partially stayed term suspensions on attorneys—both with and without prior discipline—who engaged in conduct comparable to Engel's. *See*, *e.g.*, *Cleveland Metro. Bar Assn. v. Bancsi*, 141 Ohio St.3d 457, 2014-Ohio-5255, 25 N.E.3d 1018 (imposing a two-year suspension with 18 months stayed on the license of an attorney with prior suspensions who neglected a client's legal matter resulting in its dismissal and failed to reasonably communicate with the affected client); *Columbus Bar Assn. v. Reed*, 145 Ohio St.3d 464, 2016-Ohio-834, 50 N.E.3d 516 (imposing a two-year suspension with 18 months stayed on a previously disciplined attorney who had neglected client matters, failed to reasonably communicate with the affected clients, and also failed to cooperate in a fee-dispute arbitration and the ensuing disciplinary investigations); and *Disciplinary Counsel v. Hallquist*, 128 Ohio St.3d 480, 2011-Ohio-1819, 946 N.E.2d 224 (imposing a two-year suspension with six months stayed on an attorney with no prior discipline who had neglected two client matters and failed to cooperate in the resulting disciplinary investigation).

{¶ 15} The board determined that the facts of this case most closely aligned with those of *Columbus Bar Assn. v. DiAlbert*, 120 Ohio St.3d 37, 2008-Ohio-5218, 896 N.E.2d 137. Like Engel, DiAlbert had neglected a single client's legal matter, failed to fully cooperate in the disciplinary process, and had a diagnosed mental disorder that contributed to his misconduct. He also had two prior instances of misconduct—one for leading a client to believe that he had filed a motion for judicial release when he had not done so and the other for failing to comply with continuing-legal-education requirements. *Id*. at ¶ 1, 8. We suspended DiAlbert's license for two years with 18 months of the suspension stayed on conditions,

5

including compliance with an Ohio Lawyers Assistance Program ("OLAP") contract and completion of a two-year period of monitored probation. *Id*. at ¶ 12.

{¶ 16} Noting that Engel has twice been disciplined for the same type of misconduct that he has been found to have committed in this case, and that unlike DiAlbert, he failed to fully cooperate in the disciplinary process, the board recommended that he be suspended from the practice of law for two years with 18 months of the suspension stayed. On his application for reinstatement, the board would also require him to submit proof that (1) he has continued to receive counseling from a qualified healthcare professional, (2) he is adhering to the recommendations of his primary care physician, (3) he is in compliance with his March 7, 2017 OLAP contract and any extension of it, and (4) a qualified healthcare professional has determined that he is able to return to the competent and ethical professional practice of law. Following his reinstatement to the practice of law, the board further recommended that Engel be required to comply with the recommendations of his healthcare professionals while serving a two-year period of monitored probation pursuant to Gov.Bar R. V(21).

## Objections

{¶ 17} Engel's primary objections relate to the board's recommendation that he serve a two-year suspension from the practice of law with just 18 months of that suspension stayed on conditions. But he also objects to the panel's denial of his motion to supplement his posthearing brief. In the interest of clarity, we address Engel's objections in reverse order.

### *Denial of Motion to Supplement*

{¶ 18} In Engel's third objection, he argues that the panel erred in denying his August 1, 2017 motion to supplement his posthearing brief following a dispute with his counsel that allegedly deprived him of the opportunity to highlight certain mitigating factors and cite additional precedent favoring a lesser sanction.

6

**{¶ 19}** Engel's motion was not timely, as it was filed more than five weeks after the deadline that the panel had set for filing posthearing briefs and just six days before the full board filed its report and recommendation with this court. The facts that he sought to bring to the panel's attention were already a part of the record, and the board was not limited to the consideration of the precedent cited in the briefs. Moreover, Engel has availed himself of the opportunity to present his proposed supplemental authority in his objections to this court. For these reasons, we find that the board did not abuse its discretion by overruling his motion to supplement his posthearing brief, and we overrule Engel's third objection.

*Weight Attributed to Mitigating Evidence*

**{¶ 20}** In his second objection, Engel contends that the board should have afforded greater mitigating weight to his mental disorders and should have considered evidence of additional mitigating factors—including his OLAP contract, his mentoring relationship, his service to economically disadvantaged clients in consumer-protection and foreclosure-defense cases, and changes that he made to his office procedures and staffing to prevent future misconduct. He also urges us to find that his anxiety and depression "contributed significantly" to his misconduct and that, when combined with other mitigating evidence, they warrant the imposition of a fully stayed suspension.

**{¶ 21}** The board made extensive findings regarding the parties' stipulated mitigating factors and Engel's supporting evidence. It acknowledged that Engel admitted that he had not been attentive to Shelton's case and that he attributed his inattention to her case to its not being in active litigation. The board also credited Engel's testimony that he did not realize he was suffering from anxiety and depression or that his conditions were adversely affecting his practice. The board acknowledged that Engel was incredibly ashamed of and embarrassed by his conduct and that he has taken steps to ensure that it will not recur. For example, it credited Engel's testimony that his health and mood had improved since he started

taking a prescribed antidepressant and that in addition to being committed to his course of psychotherapy, he had also entered into and complied with a three-year OLAP contract. And in furtherance of his professional obligations, Engel hired an associate to facilitate communication with his clients and began to confide in a mentor, attorney Jonathan Hollingsworth. Hollingsworth confirmed that the mentoring relationship commenced in July 2016 and that he had met with Engel on three occasions to discuss Engel's personal life, his office arrangement, and his working to maintain a calendar that would allow Engel to meet his clients' needs.

{¶ 22} The board also credited Engel for eight character letters that identified him as a very competent, well-respected attorney of some renown in his area of practice. It noted that three of the attorneys who wrote letters on Engel's behalf also testified to his good character, legal skills, and respect for and commitment to his clients and the legal system. And despite their knowledge of Engel's three disciplinary proceedings, all stated that they would not hesitate to refer clients to him.

{¶ 23} The board also considered the written report and video deposition testimony of Engel's treating psychologist, Marsha K. Weston, Psy.D. The testimony revealed that Dr. Weston began treating Engel for depression and anxiety in August 2016 and had seen him twice a week through April 2017 for 55 to 60 sessions. Dr. Weston observed that Engel has tended to avoid conflict, isolate himself, and shut down emotionally. The board accepted Dr. Weston's testimony that those conditions had been present for many years and that they contributed significantly to Engel's delay in contacting his client, taking action on his client's behalf, and responding to disciplinary counsel. Yet we note that on cross-examination, Dr. Weston was unable to explain why Engel's mental disorders caused him to neglect only a single client matter.

{¶ 24} Ultimately, the board recognized Engel's progress in psychotherapy, his positive response to a prescription antidepressant, and his belief that meetings

8

with his professional mentor are helpful. Furthermore, the board accepted Dr. Weston's testimony that she was satisfied with Engel's progress—which she estimated to be a 75 to 80 percent improvement—and acknowledged her opinion that Engel can safely and competently practice law provided he continues his medication, participate in therapy, and meet with his mentor.

{¶ 25} Although the board did not expressly state whether Engel's diagnosed mental conditions were solely, principally, or substantially responsible for his misconduct as Engel now suggests it should have, the board's findings clearly demonstrate that it attributed significant effect to Engel's mitigating evidence. Indeed, those mitigating factors led the board to reduce the recommended sanction from a presumptive indefinite suspension to a two-year suspension with all but six months stayed—even though Engel has already been sanctioned twice for engaging in similar misconduct, has committed multiple offenses, and initially failed to cooperate in relator's investigation. Having independently reviewed the record, we are confident that the panel properly considered and weighed all mitigating evidence. We therefore overrule Engel's second objection.

*Precedent for Sanction*

{¶ 26} In Engel's first objection, he asserts that our precedent (including that cited by the board) supports the imposition of a fully stayed suspension under the facts of this case. In support, he identifies four cases in which we have imposed fully stayed suspensions on attorneys who had prior records of disciplinary offenses, all readily distinguishable from the facts presently before us.

{¶ 27} In *Disciplinary Counsel v. Turner*, 140 Ohio St.3d 109, 2014-Ohio-3158, 15 N.E.3d 851, we imposed a two-year stayed suspension on an attorney who deposited personal funds into his client trust account, used the account to pay his personal and business expenses, and initially failed to cooperate in the ensuing disciplinary investigation. But Turner's conduct did not affect any clients, and

there was no allegation that his client-trust account contained any client funds. And although Turner had five prior suspensions, none of them were for similar misconduct. In contrast to Engel, four of Turner's prior suspensions related to noncompliance with attorney registration or CLE requirements, with just one suspension arising from his neglect and other client related matters.

{¶ 28} In *Mahoning Cty. Bar Assn. v. Hanni*, 145 Ohio St.3d 492, 2016-Ohio-1174, 50 N.E.3d 542, we imposed a one-year fully stayed suspension with CLE and monitored-probation requirements for an attorney's neglect and failure to communicate with a single client. We had previously suspended Hanni for six months, with the entire suspension stayed, for neglecting another client's matter and making unsubstantiated claims of ethical misconduct against a county prosecutor. *Id.* at ¶ 1. Similarly, in *Cleveland Metro. Bar Assn. v. Berk*, 132 Ohio St.3d 82, 2012-Ohio-2167, 969 N.E.2d 256, we imposed an 18-month stayed suspension with two years of monitored probation for misconduct that included a pattern of missed court deadlines and appearances in several client matters that echoed Berk's prior disciplinary offenses. But neither Hanni nor Berk failed to cooperate in their respective disciplinary investigations as Engel has. *Hanni* at ¶ 11; *Berk* at ¶ 19; *see also Mahoning Cty. Bar Assn. v. Hanni*, 127 Ohio St.3d 367, 2010-Ohio-5771, 939 N.E.2d 1226, ¶ 24; *Cleveland Bar Assn. v. Berk*, 114 Ohio St.3d 478, 2007-Ohio-4264, 873 N.E.2d 285, ¶ 10.

{¶ 29} We also imposed a two-year stayed suspension in *Ashtabula Cty. Bar Assn. v. Brown*, 151 Ohio St.3d 63, 2017-Ohio-5698, 86 N.E.3d 269, based on the respondent's use of then sitting Justice William O'Neill's name on his office sign and business card approximately 18 years after they had last practiced together. Although several aggravating factors were present, including Brown's prior discipline, selfish motive, and failure to acknowledge the wrongful nature of his conduct, Brown's misconduct differed from Engel's in that it did not mimic his

prior offenses or affect any clients and because he cooperated in the disciplinary process.

{¶ 30} Based upon the foregoing, we are not persuaded that our precedent supports the imposition of a fully stayed suspension in this case. Nor do we find Engel's argument that his case is sufficiently distinguishable from the cases cited by the board to warrant the imposition of a lesser sanction here. Rather, given the unique facts and circumstances of this case, we find that a brief actual suspension from the practice of law followed by a longer stayed suspension with monitoring will best protect the public from harm and preserve the public's trust in the legal profession. Therefore, we overrule Engel's first objection and adopt the board's recommended sanction.

**Conclusion**

{¶ 31} Having overruled Engel's objections, we adopt the board's findings of fact, misconduct, aggravating and mitigating factors, and recommended sanction. Accordingly, we suspend Andrew Mahlon Engel from the practice of law in Ohio for two years, with 18 months of the suspension stayed on the condition that he engage in no further misconduct. If he fails to comply with the condition of the stay, the stay will be lifted, and he will serve the entire two-year suspension.

{¶ 32} On his application for reinstatement, Engel shall submit proof that he has continued counseling with Dr. Weston or another qualified healthcare professional, is adhering to the recommendations of his primary-care physician, and remains in compliance with his March 7, 2017 contract with OLAP, along with any extensions recommended by his treating professionals or OLAP. He shall also submit proof that a qualified healthcare professional has determined that he is able to return to the competent and ethical professional practice of law.

{¶ 33} On reinstatement to the practice of law, Engel shall serve a two-year period of monitored probation in accordance with Gov.Bar R. V(21), during which time he shall comply with the recommendations of his treating healthcare

professionals, maintain compliance with any OLAP terms that may be in effect, and continue to work with a monitoring attorney approved by relator. Costs are taxed to Engel.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, FRENCH, LASTER MAYS, FISCHER, and DEWINE, JJ., concur.

KENNEDY, J., concurs in part and dissents in part, with an opinion.

ANITA LASTER MAYS, J., of the Eighth District Court of Appeals, sitting for O'Neill, J.

_____

**KENNEDY, J., concurring in part and dissenting in part.**

**{¶ 34}** I concur with the majority's decision to suspend Andrew Mahlon Engel from the practice of law in Ohio for two years, with 18 months of the suspension stayed on the condition that he engage in no further misconduct. I also agree that on his application for reinstatement, Engel shall submit proof that he has continued counseling with Dr. Weston or another qualified healthcare professional, is adhering to the recommendations of his primary-care physician, and remains in compliance with his March 7, 2017 contract with the Ohio Lawyers Assistance Program ("OLAP"), along with any extensions recommended by his treating professionals or OLAP. I disagree, however, with the majority's reinstatement requirement for Engel to submit proof that a qualified healthcare professional has determined that he is able to return to the competent and ethical professional practice of law.

**{¶ 35}** When imposing sanctions for attorney misconduct, we consider the mitigating factors listed in Gov.Bar R. V(13). *See Disciplinary Counsel v. Pickrel*, 151 Ohio St.3d 466, 2017-Ohio-6872, 90 N.E.3d 853, ¶ 10. Relevant currently is Gov.Bar R. V(13)(C)(7), which permits a mental disorder or chemical dependency to be considered mitigating upon all of the following:

(a) A diagnosis of a disorder by a qualified health care professional or qualified chemical dependency professional;

(b) A determination that the disorder contributed to cause the misconduct;

(c) In the case of mental disorder, a sustained period of successful treatment or in the case of substance use disorder or nonsubstance-related disorder, a certification of successful completion of an approved treatment program;

(d) A prognosis from a qualified health care professional or qualified chemical dependency professional that the attorney will be able to return to competent, ethical professional practice under specified conditions.

If any one of the factors is not established, the mental disorder or qualified chemical dependency may not be considered as mitigation. *See*, *e.g.*, *Disciplinary Counsel v. Joltin,* 147 Ohio St.3d 490, 2016-Ohio-8168, 67 N.E.3d 780, ¶ 22 (board did not consider attorney's mental-health issues to be mitigating factors, as there was no proof that they caused his misconduct).

{¶ 36} In this matter, the board adopted the parties' stipulation that Engel's mental disorders of depression and anxiety may be considered as mitigation. They agreed that Engel had established all the factors recited in Gov.Bar R. V(13)(C)(7), including "a prognosis from a qualified health care professional that respondent is able to return to the competent, ethical practice of law now and in the future so long as he continues to follow the professional advice of his mental health provider and his family doctor." As Engel has already established that he is currently able to return to the competent and ethical professional practice of law now and in the

future, I would not require him to submit this proof with his application for reinstatement.

**{¶ 37}** Therefore, I respectfully concur in part and dissent in part.

_____

Scott J. Drexel, Disciplinary Counsel, Joseph M. Caligiuri, Chief Assistant Disciplinary Counsel, and Jennifer A. Bondurant, Assistant Disciplinary Counsel, for relator.

Pyper and Nordstrom, L.L.C., and Thomas H. Pyper, for respondent.

_____