**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cleveland Metro. Bar Assn. v. Bancsi,* **Slip Opinion No. 2014-Ohio-5255.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-5255

CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* BANCSI.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland Metro. Bar Assn. v. Bancsi,* Slip Opinion No. 2014-Ohio-5255.]**

*Attorneys—Misconduct—Failure to act with reasonable diligence—Failure to keep client reasonably informed about status of a matter—Engaging in conduct prejudicial to the administration of justice—Failure to notify client of lack of malpractice insurance—Two-year suspension, with 18 months stayed on conditions.*

(No. 2014-0192—Submitted April 8, 2014—Decided December 4, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 2012-091.

————————————

**Per Curiam**.

{¶ 1} Respondent, Joseph Bancsi of Avon Lake, Ohio, Attorney Registration No. 0025450, was admitted to the practice of law in Ohio in 1972. In 1995, we publicly reprimanded him for failing to deposit unearned fees in a client

trust account, failing to properly account for client funds, and failing to return a client's case file after the client had discharged him. *Cleveland Bar Assn. v. Bancsi*, 72 Ohio St.3d 525, 651 N.E.2d 949 (1995). Also in 1995, we suspended him for failure to meet the substance-abuse component of his continuing-legal-education ("CLE") requirements but reinstated him later that year. *In re Continuing Legal Edn. Suspension of Bancsi*, 74 Ohio St.3d 1431, 655 N.E.2d 1311 (1995); 74 Ohio St.3d 1449, 656 N.E.2d 691 (1995). In 1997, we suspended him for one year with six months stayed for practicing law during his CLE suspension. *Disciplinary Counsel v. Bancsi*, 79 Ohio St.3d 392, 683 N.E.2d 1072 (1997). In 2012, we suspended him again for failure to comply with CLE requirements but reinstated him the following month. *In re Continuing Legal Edn. Suspension of Bancsi*, 133 Ohio St.3d 1472, 1477, 2012-Ohio-5238, 978 N.E.2d 198; 133 Ohio St.3d 1503, 2012-Ohio-5760, 979 N.E.2d 349.

{¶ 2} In the present case, relator, Cleveland Metropolitan Bar Association, charged Bancsi with professional misconduct for mishandling a client's domestic-relations matter. In response to relator's complaint, Bancsi admitted that he had failed to properly notify his client that he lacked malpractice insurance, but he otherwise disputed that his conduct violated any of the Rules of Professional Conduct. After a hearing, a three-member panel of the Board of Commissioners on Grievances and Discipline found that Bancsi engaged in the charged misconduct and recommended that he serve a two-year suspension, with 18 months stayed on conditions, along with a two-year term of monitored probation commencing upon his reinstatement from the actual suspension. The board issued a report adopting the panel's findings and recommended sanction, and neither party has filed objections to the board's report and recommendation.

{¶ 3} Upon our review of the record, we accept the board's findings of fact and misconduct and agree that the board's recommended sanction is appropriate in this case.

**Misconduct**

{¶ 4} In early May 2009, Thomas Scott retained Bancsi—a sole practitioner with a long history of handling domestic-relations cases—to file a motion to modify his monthly spousal-support obligation. Scott had retired in April 2009, and his divorce decree authorized him to petition the domestic-relations court for a reduction in spousal support after his retirement. Scott paid Bancsi a $3,500 retainer fee, and Bancsi promised to file the motion within a week. The timing of Scott's motion was significant: not only did Scott want to reduce his obligation as soon as possible, but the court's ultimate ruling would likely be made retroactive to the date that the motion was filed.

{¶ 5} Bancsi filed the motion on May 29, 2009, and opposing counsel thereafter served him with interrogatories and a request for production of documents. Bancsi failed to respond to the discovery matters, and he also failed to inform Scott that the requests were made. In August 2009, opposing counsel filed a motion to compel, which the court granted five days later. Scott claims that after learning of the outstanding document requests from his daughter, he called Bancsi, who stated that he had forgotten to inform Scott about the request. Bancsi instructed Scott to bring the requested documents with him to the next scheduled hearing. Bancsi, however, never discussed the interrogatories with Scott.

{¶ 6} As instructed, Scott brought the requested documents with him to a September 28, 2009 hearing and gave them to Bancsi. But Bancsi did not turn over the documents to opposing counsel, and after a week had passed, Scott learned from his daughter that Bancsi had not yet produced the documents. Scott called Bancsi, who indicated that he would turn over the documents the following day, but he did not ultimately produce them until October 19, 2009.

{¶ 7} On October 23, 2009, Scott's ex-wife moved to dismiss his motion to modify spousal support because Scott had failed to respond to her

interrogatories. Four days later, Bancsi filed a motion to continue and stay the proceedings because he was scheduled to undergo bypass surgery the first week of November and his recovery was anticipated to last about six to eight weeks. In what the board characterized as a "surprising and somewhat heavy handed response to [Bancsi's] plight," the domestic-relations court granted the motion to dismiss and overruled Bancsi's request for a continuance.

{¶ 8} Notwithstanding the court's dismissal of his motion, Scott was sympathetic to Bancsi's health issues. In mid-January 2010, Bancsi informed Scott that within a week, he would file a motion for relief from judgment pursuant to Civ.R. 60(B). But by February 10, 2010, Bancsi had yet to file the motion, and Scott sent him a letter expressing his disappointment and concern over the lack of progress. Bancsi did not ultimately file the motion for relief from judgment until April 6, 2010. Bancsi testified at his disciplinary hearing that his recovery from surgery took longer than expected and that due to his health problems, he could not have filed the motion any earlier. But according to Scott, Bancsi had not informed him of the continuing severity of those health issues or indicated that he was not otherwise able to reassume responsibility for Scott's case. In addition, the board noted that in February 2010, Bancsi was apparently healthy enough to file a new divorce case for a different client and to enter an appearance in another case.

{¶ 9} The domestic-relations court denied Scott's motion for relief from judgment on May 26, 2010. Because the dismissal had been without prejudice, Bancsi promised Scott that he would file a new motion to modify support the following week, but he failed to follow through. Scott then left telephone messages for Bancsi on June 9 and 15, 2010, and after not hearing back, Scott terminated the attorney-client relationship on June 20, 2010. Scott immediately hired new counsel, who promptly filed another motion to modify the spousal-support obligation and who, by the end of the year, had successfully reduced

4

Scott's obligation from $1,000 a month to $335 a month. However, the court's order was made retroactive only to July 1, 2010, which was shortly after Scott's new counsel had filed the motion to modify.

{¶ 10} The board found that because of Bancsi's neglect, Scott lost 12 months of possible credit for any spousal-support reduction that he had hoped to obtain. The board further noted that if, as Bancsi had claimed, his health was affecting him such that he was unable to competently represent Scott, "then it was his responsibility as a sole practitioner to find replacement counsel and refer Scott's case to another lawyer who could complete the work." Based on this conduct, the board determined that Bancsi violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice). We concur in the board's findings of misconduct.

{¶ 11} In addition, the parties stipulated and the board found that Bancsi failed to properly notify Scott that he lacked professional malpractice insurance, which violated Prof.Cond.R. 1.4(c) (requiring a lawyer to inform a client in writing that the lawyer does not maintain professional liability insurance). We agree.

## Sanction

{¶ 12} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors

listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

*Aggravating and mitigating factors*

**{¶ 13}** As mitigating factors, Bancsi did not act with a dishonest or selfish motive and he fully cooperated in the disciplinary process. *See* BCGD Proc.Reg. 10(B)(2)(b) and (d). The board determined that although Bancsi ultimately refunded Scott's $3,500 retainer, Scott suffered other financial damages as a result of Bancsi's neglect—namely, 12 months of paying a spousal-support obligation that was more than it should have been. Therefore, the board found, and we agree, that restitution should not be a mitigating factor in this case.

**{¶ 14}** In aggravation, Bancsi has prior discipline, he engaged in multiple instances of neglect, Scott was a somewhat vulnerable client who sustained financial damages, and Bancsi failed to make full restitution. *See* BCGD Proc.Reg. 10(B)(1)(a), (d), (h), and (i). In considering whether to recommend that Bancsi should be ordered to make full restitution, the board noted that Scott had declined to sue Bancsi for the damages that he sustained and that had litigation been filed, it is conceivable that Bancsi may have successfully asserted affirmative defenses. Thus, the board concluded that Bancsi should not be required to pay for damages that his former client had not sought. We agree with this conclusion.

*Applicable precedent*

**{¶ 15}** To support its recommended sanction, the board cites *Cleveland Metro. Bar Assn. v. Berk*, 132 Ohio St.3d 82, 2012-Ohio-2167, 969 N.E.2d 256, and *Warren Cty. Bar Assn. v. Marshall*, 113 Ohio St.3d 54, 2007-Ohio-980, 862 N.E.2d 519. In *Berk*, we issued a stayed 18-month suspension on an attorney who neglected two client matters by failing to appear for scheduled court conferences in each case, which resulted in dismissal of his clients' actions. *Id.* at ¶ 5-9. Similar to Bancsi, the attorney in *Berk* had prior discipline and engaged in

multiple offenses. *Id.* at ¶ 18. But Berk accepted responsibility for his inaction in his clients' cases, and he made a timely good-faith effort to rectify the consequences of his misconduct. *Id.* at ¶ 19-20, 28. In addition, we found that Berk's clients had not suffered irreparable harm and that Berk had "excellent character and reputation outside of the charged misconduct," as evidenced by the testimony establishing that he provided a "great deal of free or low-cost legal representation to those who otherwise could not afford to obtain such services." *Id.* at ¶ 24-28. Based on these factors, we concluded that an actual suspension in *Berk* was not necessary to protect the public, although we required him to serve an 18-month stayed suspension and a two-year term of monitored probation. *Id.* at ¶ 28-29.

{¶ 16} In contrast, in *Marshall*, we suspended an attorney for two years for neglecting two client matters and for making a false statement in a disciplinary investigation. *Id*. at ¶ 4-10, 18. Similar to Bancsi, the attorney in *Marshall* had prior discipline, and his neglect harmed a vulnerable client. *Id.* at ¶ 13. But in addition, Marshall's misconduct occurred while his earlier disciplinary case was pending and during his stayed suspension, and we were "particularly troubled" by the fact that he could give a false statement to an attorney investigating him while his initial disciplinary case was pending. *Id.* at ¶ 15-16. Based on these factors, we determined that Marshall appeared "unwilling or unable to comply with the ethical standards that govern the legal profession." *Id*. at ¶ 15. We held that his conduct warranted an actual two-year suspension, as recommended by the board. *Id.* at ¶ 11, 18.

{¶ 17} Following this precedent, the board reasoned that Bancsi should receive an actual suspension, but not a lengthy one. The board recognized that Bancsi was dealing with significant health problems during his representation of Scott, but the board nonetheless concluded that even given those health issues, Bancsi cannot be excused from meeting the needs of his client. Thus, the board

recommends a two-year suspension with 18 months stayed on conditions, along with a two-year period of probation commencing upon Bancsi's reinstatement from his actual suspension.

{¶ 18} We agree that the appropriate sanction for Bancsi's misconduct falls between the sanctions we issued in *Berk* and *Marshall*. Similar to the attorneys in those cases, Bancsi neglected his client's case, and he has been subject to prior discipline. *Berk*, however, involved more significant mitigating factors, and unlike the attorney in *Berk*, Bancsi has previously been disciplined on more than one occasion and previously was actually suspended from the practice of law for a disciplinary violation. Thus, a harsher sanction than that in *Berk* is warranted. On the other hand, Bancsi's misconduct was not as egregious as the misconduct in *Marshall*, as Bancsi did not commit any act similar to giving a false statement during a disciplinary investigation. Accordingly, a lesser sanction than the two-year actual suspension in *Marshall* is justified. Thus, having considered Bancsi's misconduct, the aggravating and mitigating factors, and the sanctions imposed in comparable cases, we agree with the board's recommended sanction in this case.

### Conclusion

{¶ 19} Joseph Bancsi is suspended from the practice of law in Ohio for two years. The last 18 months of that suspension are stayed on the conditions that he pay the costs of these proceedings and engage in no further misconduct. In addition, Bancsi shall serve a two-year term of monitored probation, commencing upon his reinstatement from the actual suspension. Costs are taxed to Bancsi.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Heather M. Zirke, Bar Counsel; and Shapero & Green, L.L.C., Brian Green, and Michael Shapero, for relator.

Joseph Bancsi, pro se.

_____