[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Hillman*, Slip Opinion No. 2022-Ohio-447.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-447

DISCIPLINARY COUNSEL *v*. HILLMAN.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Hillman*, Slip Opinion No. 2022-Ohio-447.]

*Attorneys—Misconduct—Attorney violated the Rules of Professional Conduct, including Prof.Cond.R. 1.4(a)(3) (requiring an attorney to keep the client reasonably informed about the status of the client's matter) and 3.4(d) (requiring an attorney to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party)—Two-year suspension imposed, stayed in its entirety on conditions.*

(No. 2021-0443—Submitted September 8, 2021—Decided February 17, 2022.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2020-042.

——————————

**Per Curiam.**

{¶ 1} Respondent, Steven Edward Hillman, of Dublin, Ohio, Attorney Registration No. 0002578, was admitted to the practice of law in Ohio in 1973. We

have twice suspended him from the practice of law for his failure to timely register as an attorney. *See In re Attorney Registration Suspension of Hillman*, 123 Ohio St.3d 1475, 2009-Ohio-5786, 915 N.E.3d 1256; *In re Attorney Registration Suspension of Hillman*, 130 Ohio St.3d 1420, 2011-Ohio-5627, 956 N.E.3d 310. And on March 24, 2016, we imposed a conditionally stayed one-year suspension on Hillman for his failure to file a federal personal income-tax return for 2011. *Disciplinary Counsel v. Hillman*, 145 Ohio St.3d 489, 2016-Ohio-1172, 50 N.E.3d 539, ¶ 11.

{¶ 2} In a July 2020 complaint, relator, disciplinary counsel, charged Hillman with four ethical violations arising from his conduct in the representation of a single client.

{¶ 3} After conducting a hearing, a three-member panel of the Board of Professional Conduct unanimously dismissed two of the four alleged rule violations. Based on the evidence presented at the hearing, the panel and the board found that Hillman had failed to reasonably communicate with his client and had failed to make a reasonably diligent effort to comply with discovery requests in the client's case. The board recommends that we suspend Hillman from the practice of law for two years with the entire suspension stayed on the conditions that he engage in no further misconduct and pay the costs of these proceedings. Hillman objects to the board's findings of misconduct and its recommendation that he be required to pay the costs of the proceedings. For the reasons that follow, we overrule Hillman's objections and adopt the board's findings of misconduct and recommended sanction.

## Misconduct

{¶ 4} James Watkins's Toledo, Ohio home was severely damaged by a fire in February 2017. Allstate Insurance, the insurer of Watkins's home, denied his claim, and in April 2017, Watkins retained Hillman on a contingent-fee basis to pursue his claim against Allstate. On January 5, 2018, Hillman filed a complaint

against Allstate on Watkins's behalf in the Lucas County Court of Common Pleas. Attorneys Andrew Scheper, Patrick Schomaker, and Carmen Sarge of Rolfes Henry Co., L.P.A., represented Allstate in that case.

{¶ 5} In January 2019, Allstate sent Hillman interrogatories, requests for production of documents, and a notice of Watkins's deposition. Hillman then filed a motion for a protective order, claiming that the notice of deposition constituted harassment because Watkins had previously been questioned under oath regarding the claim.

{¶ 6} In February, Sarge emailed Hillman, informing him that a response to Allstate's discovery request was overdue and asking him to respond within two days. Hillman replied that he did not recall receiving discovery requests—although they had been sent to him in the same email and envelope as the deposition notice for which he had sought the protective order. Scheper emailed the discovery requests to Hillman a second time and requested a response by March 8. After that deadline passed, Allstate filed a motion to compel discovery.

{¶ 7} During a March 12 pretrial conference, Hillman stated that he would immediately provide Allstate with the requested documents and Watkins's responses to the first set of interrogatories but that he would not be able to send the verification page for the interrogatories until a short time after the conference. Based on that representation, Allstate withdrew its motion to compel. The court informed the parties that it would deny the motion for a protective order. The next day, Schomaker emailed Hillman to confirm their conversation, to request potential dates for Watkins's deposition, and to ask when he could expect to receive the verification page.

{¶ 8} Having received no response, Scheper emailed Hillman on March 22 to propose dates for the deposition. Six days later, Hillman informed Scheper that he and Watkins were available on most of the proposed dates, but he failed to address the outstanding discovery issues. Scheper scheduled the deposition for

April 12, on the condition that the requested discovery be provided to Allstate on or before April 9. Although Allstate received Watkins's discovery responses by April 8, Watkins did not sign the requested verification page until he appeared for his deposition on April 12.

{¶ 9} On April 23, Scheper sent Hillman an Internal Revenue Service ("IRS") Form 4506-T and a letter instructing Watkins on how to sign the form, which would authorize Allstate to obtain a transcript of Watkins's tax returns, and offered to submit a formal discovery request to obtain Watkins's authorization if required. Scheper also informed Hillman that Scheper's firm had issued two subpoenas for Watkins's banking records and that he would provide Hillman with copies of any records that he received in response to the subpoenas. Hillman did not respond to that letter or a follow-up email about the tax documents. Allstate then sent Hillman a formal request for the production of the tax-related documents.

{¶ 10} In a second set of interrogatories served on June 7, Allstate sought information regarding the source of two deposits to Watkins's bank account. Three days later, Scheper furnished Hillman with a copy of a subpoena duces tecum that Allstate had served on Watkins's housemate. Hillman acknowledged receipt of the subpoena and informed Scheper that Watkins had no memory of the bank deposits that were the subject of Allstate's discovery requests. He also asked Scheper to send him copies of the records that Allstate had obtained from Watkins's bank. Although Scheper had previously provided those records to Hillman, he sent them to him again.

{¶ 11} Hillman did not respond to Allstate's request for the production of Watkins's tax documents or Scheper's emails reminding Hillman that those responses (and the response to the subpoena that had been served on Watkins's housemate) were past due. Nor did Hillman comply with the deadlines that Scheper established in those emails. He did, however, email Schomaker to inform him that "[w]hen" he received a copy of the subpoena that was served on Watkins's

4

housemate, he would "review the papers and advise [Schomaker] accordingly"—but Hillman had acknowledged receipt of that document weeks earlier.

{¶ 12} On July 25, Allstate filed a second motion to compel discovery seeking responses to all of its outstanding discovery requests, but Hillman did not respond to that motion. The court granted the motion on August 9 and stated its intention to grant sanctions against Watkins—up to and including dismissal of the complaint *with* prejudice—if the requested information was not provided to Allstate within 14 days. The board found that Hillman had not informed Watkins of that ruling.

{¶ 13} On August 16, Scheper sent Hillman another copy of IRS Form 4506-T, with notification that Watkins was required to sign and date the form himself. Several days later, Hillman returned the form, which he had signed on Watkins's behalf, along with unverified responses to the pending discovery requests. Those responses, which were handwritten by Hillman, largely denied that Watkins had any knowledge or documentation regarding the matters in question. Schomaker informed Hillman that he considered the responses to be "evasive and incomplete" and that he expected to receive complete responses by August 23. In response, Hillman submitted miniaturized copies of two checks and nothing more.

{¶ 14} On September 11, Allstate filed a motion for discovery sanctions requesting the dismissal of Watkins's complaint and an award of reasonable attorney fees. Allstate thereafter offered to settle the case for $100,000. Hillman informed Watkins of that offer and of his belief that the offer was too low, but he did not tell Watkins that the pending motion for discovery sanctions could result in the dismissal of the case with prejudice. Hillman then made a counteroffer of $600,000. Allstate rejected that offer.

{¶ 15} On October 2, 2019, the trial court granted Allstate's motion for discovery sanctions and dismissed Watkins's case with prejudice for failure to comply with the court's discovery orders. Watkins obtained new counsel and

successfully appealed the court's judgment of dismissal. His case was still pending at the time of Hillman's January 2021 disciplinary hearing.

{¶ 16} The board found that Hillman's conduct violated Prof.Cond.R. 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of the matter) and 3.4(d) (requiring a lawyer to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party).

### Hillman's Objection to the Board's Findings of Misconduct

{¶ 17} In his first objection, Hillman argues that the record demonstrates that he frequently spoke with Watkins by telephone and that he kept Watkins fully apprised of the status of his case through those calls. Indeed, at his disciplinary hearing, Hillman testified that he always kept Watkins informed of what was going on in his case—including the risk of its dismissal—and that it was Watkins who refused to cooperate with discovery orders. Hillman claimed that he had attempted to comply with Allstate's discovery requests by sending the documents that Allstate had sent to him to Watkins but that Watkins did not return them. However, the board heard conflicting testimony on those issues and found the testimony offered by Watkins and Allstate's counsel to be more credible than Hillman's.

{¶ 18} We have long recognized that "it is of no consequence that the board's findings of fact are in contravention of [the] respondent's or any other witness's testimony. 'Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.' " *Disciplinary Counsel v. Zingarelli*, 89 Ohio St.3d 210, 217, 729 N.E.2d 1167 (2000), quoting *Cross v. Ledford*, 161 Ohio St. 469, 478, 120 N.E.2d 118 (1954). We generally defer to the hearing panel's credibility determinations unless the record weighs heavily against those findings because the panel was able to observe the witnesses firsthand. *Cincinnati Bar Assn. v. Statzer*, 101 Ohio St.3d

6

14, 2003-Ohio-6649, 800 N.E.2d 1117, ¶ 8, citing *Cleveland Bar Assn. v. Cleary*, 93 Ohio St.3d 191, 198, 754 N.E.2d 235 (2001).

{¶ 19} In this case, Watkins's testimony demonstrated that he was unaware of many important facts regarding his case, even beyond those identified by the board. For example, Watkins stated that Hillman called him one morning to inform him that he needed to appear for a deposition later that day. When he asked Hillman whether he had previously informed him of the deposition, Hillman gave him the address and told him, " '[G]et down here[;] * * * we got a deposition to do.' " And although Hillman claimed that he had sent the verification page for the first set of interrogatories to Watkins for his signature, Watkins testified that he had not received it. While Watkins acknowledged that Hillman sent him an IRS form, he explained that he returned it unsigned, believing that it was not relevant to his case. He testified that if Hillman had told him that he was required to sign the document, he would have done so immediately.

{¶ 20} Watkins testified that he had no idea that Hillman had intended to file a motion for partial summary judgment or that he had filed it more than two weeks after the deadline imposed by the court. In addition, Watkins testified that Hillman failed to inform him that Allstate had filed a second motion to compel discovery and had asked the court to dismiss his case with prejudice. He stated that if he had known that there was a risk of dismissal, he would have asked the court for a continuance so that he could look for a new attorney. Instead, Hillman notified Watkins of the dismissal by text message two days after the dismissal occurred and did not respond to further communications from Watkins. Shortly thereafter, Watkins received a large yellow envelope from Hillman that contained all the documents that had been filed in his case. Watkins testified that with the exception of the IRS form, he had never seen those documents before he received them in the large yellow envelope. He stated that after he had gone to the courthouse to confirm

that his case had been dismissed, he immediately began to search for a new attorney to pursue an appeal.

{¶ 21} The evidence shows that Hillman not only failed to keep Watkins apprised of important developments in his case, but that he also failed to provide complete and timely responses to Allstate's discovery requests. For example, Hillman claims that he gave Allstate's counsel all the documents they requested or that he furnished releases, signed by Watkins, to allow Allstate to obtain those documents. But the evidence shows that Hillman provided to Allstate's counsel only illegible, miniaturized copies of checks—even though Watkins's wife had timely provided to Hillman larger and fully legible copies of the checks—and the IRS form that Hillman had signed on Watkins's behalf. Although Hillman and Watkins both testified that Hillman had Watkins's *oral consent* to sign that IRS form, the preprinted instructions on the form plainly stated that it could be signed by a representative of the taxpayer only if the taxpayer had expressly delegated that authority on a separate IRS form and a copy of the separate form was attached. Thus, Hillman's claim that he provided "[e]very document that opposing counsel wanted" is simply not true.

{¶ 22} On these facts, we find that the record does not weigh heavily against the board's credibility determinations. On the contrary, we find that it amply supports the board's findings that Hillman's conduct violated Prof.Cond.R. 1.4(a)(3) and 3.4(d). We therefore overrule Hillman's objections to those findings and adopt the findings as our own.

### Recommended Sanction

{¶ 23} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 24}** As for aggravating factors, the board found that Hillman has a history of prior discipline, engaged in a pattern of misconduct, and caused harm to a vulnerable client. *See* Gov.Bar R. V(13)(B)(1), (3), and (8). However, the board declined to find that Hillman had refused to acknowledge the wrongful nature of his misconduct, noting that he had expressed regret about the way that the events transpired and had acknowledged that there were things that he would do differently if he were confronted with a similar situation. Just one mitigating factor is present—the absence of a dishonest or selfish motive. *See* Gov.Bar R. V(13)(C)(2).

**{¶ 25}** In determining the appropriate sanction for Hillman's misconduct, the board considered the sanctions that we imposed for comparable misconduct in four cases— *Disciplinary Counsel v. Engel*, 154 Ohio St.3d 209, 2018-Ohio-2988, 113 N.E.3d 481; *Dayton Bar Assn. v. Wilcoxson*, 153 Ohio St.3d 279, 2018-Ohio-2699, 104 N.E.3d 772; *Dayton Bar Assn. v. Scaccia*, 150 Ohio St.3d 85, 2016-Ohio-3299, 79 N.E.3d 506; and *Cleveland Metro. Bar Assn. v. Bancsi*, 141 Ohio St.3d 457, 2014-Ohio-5255, 25 N.E.3d 1018.

**{¶ 26}** In *Wilcoxson*, we imposed a fully stayed six-month suspension on an attorney who failed to timely file a lawsuit on behalf of a client, failed to inform the client that the lawsuit was untimely until after the court dismissed it, failed to provide the client's file to the client's new counsel, and initially failed to cooperate in the ensuing disciplinary investigation. *Id.* at ¶ 2, 7, 14. The only aggravating factor was Wilcoxson's failure to notify the client that he did not carry professional-liability insurance. *Id.* at ¶ 8. And in contrast to Hillman, Wilcoxson had no prior discipline and presented evidence of his good character and reputation. *See id.* Based on those differences, the board concluded that Hillman's misconduct warranted a more severe sanction than Wilcoxson's misconduct did.

**{¶ 27}** In the three other cases, we imposed partially stayed term suspensions on attorneys who had prior disciplinary records when they engaged in misconduct similar to Hillman's misconduct in this case. For example, in *Bancsi*

and *Engel*, we imposed two-year suspensions with 18 months conditionally stayed for misconduct that included the failure to act with reasonable diligence in the representation of a single client and the failure to keep the client reasonably informed about the status of the client's matter. *Bancsi* at ¶ 5-10, 19; *Engel* at ¶ 6-8, 31. Like Hillman, Bancsi failed to respond to discovery requests, which resulted in the dismissal of the client's case and caused harm to the client. *Bancsi* at ¶ 5-10. And both Bancsi and Engel committed additional misconduct that has not been found in this case—namely, Bancsi engaged in conduct that was prejudicial to the administration of justice, *id.* at ¶ 10, and Engel failed to cooperate in disciplinary counsel's investigation, *Engel* at ¶ 8. While Hillman's case has several aggravating factors in common with Bancsi's and Engel's cases, Bancsi and Engel had each been disciplined for other client-related misconduct on at least two prior occasions. *See Bancsi* at ¶ 1; *Engel* at ¶ 2. In contrast, Hillman's prior discipline arose from his failure to timely register as an attorney and his failure to file a personal income-tax return.

{¶ 28} Finally, in *Scaccia*, we imposed an 18-month suspension with the final six months conditionally stayed on an attorney who failed to provide competent representation to a client, failed to act with reasonable diligence, knowingly disobeyed an obligation under the rules of a tribunal, and intentionally or habitually failed to make reasonably diligent efforts to comply with legally proper discovery requests. 150 Ohio St.3d 85, 2016-Ohio-3299, 79 N.E.3d 506, at ¶ 10, 22. Mitigating factors included Scaccia's cooperative attitude toward the disciplinary proceedings, evidence of his good character and reputation, and the imposition of other sanctions for his misconduct. *Id.* at ¶ 19. But Scaccia also refused to acknowledge the wrongful nature of his misconduct, and like Bancsi and Engel, he had twice been suspended for other client-related misconduct. *Id.* at ¶ 2, 19.

**{¶ 29}** Here, the board has acknowledged that we required Bancsi, Engel, and Scaccia to serve a period of actual suspension from the practice of law. Nonetheless, the board has emphasized that unlike the prior disciplinary actions against Bancsi, Engel, and Scaccia, Hillman's prior disciplinary actions did not involve client-related misconduct. On these facts, the board determined that Hillman's misconduct warranted a sanction somewhere between the six-month fully stayed suspension ordered in *Wilcoxson* and the partially stayed term suspensions ordered in *Bancsi*, *Engel*, and *Scaccia*. It therefore recommended that we suspend Hillman from the practice of law for two years and stay the entire suspension on the conditions that he engage in no further misconduct and pay the costs of these proceedings.

### Hillman's Objection to the Recommended Sanction

**{¶ 30}** Hillman objects to the board's recommendation that he be ordered to pay the costs of these proceedings. Specifically, he contends that it would be unfair to assess against him the full $2,005 cost of the hearing transcript because half the charges against him were dismissed by the panel and because, he alleges, no transcript was ordered and the panel chair purportedly stated that no transcript was needed. These arguments have no merit.

**{¶ 31}** Despite Hillman's claims that a transcript was neither ordered nor deemed necessary, Gov.Bar R. V(12)(K) expressly requires the board to file a certified report of its proceedings—including a transcript of the testimony—with the clerk of this court. For that reason, a transcript was prepared and filed in this case. While we acknowledge that the panel unanimously dismissed two of the four alleged rule violations, we note that all the charges in this case arose out of the same facts and circumstances. Thus, we conclude that the dismissed charges did not have a significant impact on the costs of this litigation. In any event, we do not find the costs incurred by the board in this case to be excessive or unreasonable. We

therefore overrule Hillman's objection to the board's recommendation that we assess the costs of these proceedings against him.

## Conclusion

{¶ 32} We overrule each of Hillman's objections to the board's findings of misconduct and its recommendation that he be required to pay the costs of these proceedings. Having considered the ethical obligations that Hillman violated, the aggravating and mitigating factors, and the applicable precedent, we accept the board's recommended sanction. Accordingly, Steven Edward Hillman is suspended from the practice of law for two years, stayed in its entirety on the conditions that he engage in no further misconduct and pay the costs of these proceedings. If he fails to comply with the conditions of the stay, the stay will be lifted and he will serve the entire two-year suspension. Costs are taxed to Hillman.

Judgment accordingly.

DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

KENNEDY, J., concurs, with an opinion.

FISCHER, J., concurs in part and dissents in part, with an opinion joined by O'CONNOR, C.J.

_____

**KENNEDY, J., concurring.**

{¶ 33} I concur in the majority opinion but write separately to address the dissent's assertion that the sanction imposed here—the suspension of respondent, Steven Edward Hillman, from the practice of law for two years, with the suspension stayed in its entirety on the conditions that he engage in no further misconduct and pay the costs of these proceedings—is "a mere finger wag at Hillman." Concurring and dissenting opinion, ¶ 49. To support its position that a two-year suspension with 18 months stayed is necessary in this case, the dissent cites Hillman's past professional misconduct. However, that past misconduct did not involve matters affecting a client. The primary purpose of our attorney-discipline system is not to

punish offending attorneys but to protect the public from attorneys whose misconduct draws their fitness to practice law into question. *Disciplinary Counsel v. Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, ¶ 10. Because a stayed suspension is adequate to protect the public under the circumstances of this case, I concur in the majority's opinion.

**Past Misconduct**

*Attorney-Registration Suspensions*

{¶ 34} This court has twice suspended Hillman from the practice of law for his failure to timely register as an attorney. *See In re Attorney Registration Suspension of Hillman*, 123 Ohio St.3d 1475, 2009-Ohio-5786, 915 N.E.3d 1256; *In re Attorney Registration Suspension of Hillman*, 130 Ohio St.3d 1420, 2011-Ohio-5627, 956 N.E.3d 310.

{¶ 35} Gov.Bar R. VI(10)(B) provides that an attorney who has failed to file a certificate of registration and pay the applicable attorney-registration fee within 60 days of the date on which the attorney's registration is due shall be notified of the apparent noncompliance by this court's Office of Attorney Services. "If the attorney does not file evidence of compliance or come into compliance on or before the date set forth in the notice, the attorney shall be summarily suspended from the practice of law in Ohio." *Id.* An attorney who is suspended for failing to register may be reinstated to the practice of law by applying for reinstatement with the Office of Attorney Services, filing the certificate of registration, paying the registration fee, and paying a reinstatement fee. *Id.* at Sections (2)(A) and (10)(D). If the attorney meets these conditions for reinstatement, the Office of Attorney Services "shall record the reinstatement on the roll of attorneys." *Id.* at Section (10)(D).

{¶ 36} As in civil contempt, in which the contemnor holds the key to his or her release from jail through the opportunity to purge the contempt, *see Docks Venture, L.L.C. v. Dashing Pacific Group, Ltd.*, 141 Ohio St.3d 107, 2014-Ohio-

4254, 22 N.E.3d 1035, ¶ 15, an attorney who is under an attorney-registration suspension holds the key to his or her reinstatement to the practice of law, *see* Gov.Bar R. VI(10)(D). The suspension is lifted when the attorney complies with the registration and reinstatement conditions. An attorney-registration suspension protects the public, because when the attorney is unregistered, he or she may not practice law. And there is no indication that Hillman's two prior failures to register harmed a client. In fact, we previously noted that "[i]n both cases, [Hillman] was reinstated shortly after the suspension was imposed." *Disciplinary Counsel v. Hillman*, 145 Ohio St.3d 489, 2016-Ohio-1172, 50 N.E.3d 539, ¶ 1.

*Tax Evasion*

**{¶ 37}** After Hillman was convicted of a misdemeanor offense for his willful failure to file a federal personal income-tax return for the year 2011, this court imposed on him a conditionally stayed one-year suspension for his failure to file returns for the years 2009, 2010, and 2011. *Id.* at ¶ 2, 5, 11.

**{¶ 38}** Arguably, Hillman harmed the public by not paying all the income taxes that he owed in a timely manner, but that misconduct did not harm a client's matter. And once again, the sanction that this court imposed in that case was designed to give Hillman the key to his continued practice of law; his suspension was "fully stayed on the conditions that he make all payments on his back taxes as required by the Internal Revenue Service, timely pay his current taxes, complete a class in law-office management within one year after the issuance of [this court's order], and engage in no further misconduct." *Id.* at ¶ 11. So, as with his attorney-registration suspensions, Hillman had the opportunity to maintain the privilege of practicing law in Ohio.

**{¶ 39}** The dissent, however, asserts that Hillman's prior suspensions would justify this court's imposing an actual suspension from the practice of law in this case. It goes even further than that, suggesting that "this court should impose the stayed one-year suspension from Hillman's most recent prior disciplinary case

because he has certainly engaged in further misconduct." Concurring and dissenting opinion at ¶ 79. However, Hillman fully served his stayed, one-year suspension regarding his income-tax-return misconduct, and the relator in that case (who is the same relator here, disciplinary counsel) never sought to have the stay lifted based on evidence that Hillman had violated the conditions of the stay during the term of the suspension. The dissent points to no authority for its position that we could lift the stay of the one-year suspension now, and the Rules for the Government of the Bar do not provide this court with authority to lift a stayed suspension in a separate case years after—or possibly even decades after—the suspension has expired.

### Current Misconduct

{¶ 40} That brings us to the current misconduct. In this case, Hillman violated Prof.Cond.R. 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of the matter) and 3.4(d) (requiring a lawyer to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party).

{¶ 41} Over a period of months, Hillman failed to timely and completely respond to various discovery requests and orders in litigation against Allstate Insurance, the insurer of his client's home, notwithstanding his representations to opposing counsel and the trial court that he would respond to the requests and comply with the orders. And when the trial court threatened discovery sanctions up to and including dismissal of the client's lawsuit with prejudice, Hillman failed to inform the client of the potential sanctions, even though a settlement offer by Allstate was on the table. After Hillman still failed to comply with the discovery orders, the trial court granted Allstate's motion for discovery sanctions and dismissed the lawsuit with prejudice. Nonetheless, the client obtained new counsel and successfully appealed the court's judgment of dismissal, which mitigated the harm to the client. So, the dissent's assertion that Hillman's misconduct

"eventually cost his client the case" is not accurate. Concurring and dissenting opinion at ¶ 51. The client's case was still pending at the time of Hillman's January 2021 disciplinary hearing.

{¶ 42} The majority properly distinguishes this case from *Disciplinary Counsel v. Engel*, 154 Ohio St.3d 209, 2018-Ohio-2988, 113 N.E.3d 481; *Dayton Bar Assn. v. Scaccia*, 150 Ohio St.3d 85, 2016-Ohio-3299, 79 N.E.3d 506; and *Cleveland Metro. Bar Assn. v. Bancsi*, 141 Ohio St.3d 457, 2014-Ohio-5255, 25 N.E.3d 1018. In those cases, this court imposed actual suspensions on the attorneys, but the attorneys had each been disciplined for prior *client-related misconduct* on at least two occasions. *See Engel* at ¶ 2, 31; *Bancsi* at ¶ 1, 19; *Scaccia* at ¶ 2-3, 26. In contrast, this is Hillman's first disciplinary case in which his misconduct concerned a client matter.

{¶ 43} And his misconduct here is similar to the misconduct this court found in *Columbus Bar Assn. v. Kluesener*, 150 Ohio St.3d 322, 2017-Ohio-4417, 81 N.E.3d 457. In *Kluesener*, this court imposed a fully stayed suspension on an attorney who failed to keep his client reasonably informed and failed to comply with discovery requests and orders, which contributed to the trial court's dismissal of the client's lawsuit with prejudice. *Id.* at ¶ 14.

{¶ 44} What Hillman did was inexcusable. He failed to respond to Allstate's discovery requests and to comply with the trial court's orders to respond to those requests, and his failure to comply caused the dismissal of his client's lawsuit with prejudice, caused the client to have to obtain new counsel, and caused the client to have to appeal the trial court's dismissal of his lawsuit in order to salvage it. Nonetheless, the proper sanction for this misconduct is the one that this court imposes today—the suspension of Hillman from the practice of law for two years, with the suspension stayed in its entirety on the conditions that he engage in no further misconduct and pay the costs of these proceedings. And if during that two-year period Hillman engages in any misconduct—e.g., failing to file a personal

income-tax return, failing to timely and completely comply with a discovery request or order, or failing to keep a client reasonably informed—this court will revoke the stay and impose an actual suspension from the practice of law.

{¶ 45} So, once again, Hillman has the key to his continued practice of law, just as he did when we twice suspended him for his failures to register as an attorney and when we imposed a stayed suspension relating to his failure to file tax returns. This does not mean, as the dissent asserts, that we are saying that "[b]ad lawyering in civil cases in Ohio is okay." Concurring and dissenting opinion at ¶ 83. Nor does our decision in this case "provide[ ] a green light for lawyers to play discovery games in civil cases throughout Ohio." *Id.* at ¶ 81.

{¶ 46} This court does not impose sanctions based on the perceived quality of an attorney's representation. Rather, we sanction attorneys for conduct that violates the Rules of Professional Conduct after reviewing the facts of the case, any mitigating and aggravating factors, and our precedent. *See Disciplinary Counsel v. Leon*, 155 Ohio St.3d 582, 2018-Ohio-5090, 122 N.E.3d 1242, ¶ 17. And based on the evidence presented in this case, Hillman violated Prof.Cond.R. 1.4(a)(3) and 3.4(d). For those violations, he should be and is sanctioned today. But in sanctioning him, our goal is to protect the public from an attorney whose misconduct draws his fitness to practice law into question, not to punish the offending attorney. *Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, at ¶ 10. And the public is adequately protected here by a stayed two-year suspension from the practice of law that will become an actual suspension if Hillman commits further misconduct or fails to pay the costs of these proceedings. This sanction is consistent with our precedent.

{¶ 47} For these reasons, I concur in the majority opinion.

_____

**FISCHER, J., concurring in part and dissenting in part.**

{¶ 48} I concur in the portion of the majority opinion's decision adopting the Board of Professional Conduct's findings that respondent, Steven Edward Hillman, violated Prof.Cond.R. 1.4(a)(3) by failing to keep his client reasonably informed about the status of his case and violated Prof.Cond.R. 3.4(d) by failing to make a reasonably diligent effort to comply with the opposing party's discovery requests. However, I heartfully dissent from the sanction imposed by the majority opinion because the sanction does not, in my view, adequately protect the public.

{¶ 49} The majority opinion suspends Hillman from the practice of law for two years, all stayed on the conditions that he engage in no further misconduct and pay the costs of these proceedings. But a sanction for misconduct such as that involved here that does not include actual time out of practice, especially for a lawyer who, like Hillman, has been disciplined multiple times before, does not adequately protect the public. Rather, the majority opinion's sanction is the equivalent of a mere finger wag at Hillman. The imposition of such a slight sanction under these circumstances, I fear, will open the door for more lawyers to engage in deceptive and dilatory discovery practices or other misconduct during civil litigation.

{¶ 50} Hillman should have some actual time out from the practice of law—at least six months—to protect the public, and there should be additional conditions for his reinstatement, including specific educational requirements and the appointment of a monitoring attorney, to ensure that his future clients, if any, are properly served. Hillman's attempts at gamesmanship (or his incompetence, or both) during discovery in his client's case exemplify why some members of the general public and some litigants believe that lawyers "churn files," ignore discovery requests, and aim to waste the opposing parties' time and money. Such gamesmanship or incompetence (or both) may not and should not be tolerated. Therefore, I would suspend Hillman from the practice of law for two years with 18

18

months stayed on the same conditions imposed by the majority opinion, plus a few additional conditions detailed below.

## I. Hillman's misconduct during discovery complicated the litigation and eventually cost his client the case

{¶ 51} On the surface, Hillman's misconduct appears to have been the result of his having been in over his head. But looking at the details of his discovery violations and the advice (or lack thereof) that he gave his client, it is apparent that Hillman's violations were, at least to some degree, strategic measures designed to conceal his own shortcomings. He was incompetent and/or engaged in gamesmanship during the discovery process; he was dishonest to opposing counsel and he unnecessarily complicated and prolonged the litigation for both sides, frustrating the entire judicial process and harming his vulnerable client. Although the majority opinion accurately recites the facts that it presents, a more detailed recitation of the facts is necessary to illustrate the egregiousness of Hillman's violations.

*A. Hillman took over 70 days to respond to the first set of interrogatories and deceitfully told opposing counsel that a response to the interrogatories would be forthcoming*

{¶ 52} Allstate Insurance, the insurer of a home that was severely damaged by fire, denied the insurance claim filed by the home's owner, James Watkins. Watkins retained Hillman to pursue the insurance claim, and Hillman filed a complaint against Allstate in the Lucas County Court of Common Pleas. On January 22, 2019, Allstate served Hillman with its first set of interrogatories and requests for production of documents, as well as a notice of Watkins's deposition, which had been scheduled for February 26. Allstate sent those documents to Hillman by email and regular U.S. mail, using one envelope. Watkins's response to the interrogatories and requests for production of documents was due on or

before February 19. So Hillman had a little under one month to provide the requested responses and to agree on a date for Watkins's deposition.

{¶ 53} In response to the notice of Watkins's deposition, Hillman filed a motion for a protective order on February 15, claiming that Allstate's purpose in requesting the deposition was to harass Watkins, because Watkins had already been questioned under oath regarding the claim. Notably, Hillman did not address the first set of interrogatories, even though they were sent to him at the same time as the notice of deposition. In fact, Hillman did not provide the interrogatories to Watkins at all during January and February 2019. Hillman did not respond to Allstate's requests by the deadline.

{¶ 54} Allstate emailed Hillman on February 20, the day after the interrogatories were due, advising him that the deadline had passed. Allstate simply requested that Hillman provide responses to its discovery requests by February 22. On that same day, Hillman replied to Allstate's email and stated that he did "not recall receiving discovery requests in this case," and he requested that Allstate send the requests in Microsoft Word format. It is clear that Hillman had received the discovery requests—they were sent with the notice of deposition that Hillman had acknowledged. But giving Hillman the benefit of the doubt, Allstate did as Hillman requested.

{¶ 55} On February 25, in an attempt to accommodate Hillman, Allstate emailed him the discovery requests in both PDF and Microsoft Word formats. Allstate requested a response on or before March 8, which was 17 days after the original deadline. And since Hillman had not provided Allstate with the information necessary to go forward with the deposition on February 26, Allstate also canceled the deposition and rescheduled it for March 12. But yet again, Hillman neither filed a response to the discovery requests by March 8 nor told Allstate that a response was forthcoming. By that point, Hillman had evaded providing discovery for more than two weeks. Therefore, on March 11, after

20

several attempts to obtain responses to its discovery requests from Hillman voluntarily, Allstate filed its first motion to compel discovery.

{¶ 56} The trial court scheduled a telephonic status conference for March 12 to address Allstate's motion to compel and the motion for a protective order filed by Hillman. Before the conference, Hillman and counsel for Allstate had a separate telephone call. Hillman assured Allstate that he would immediately provide the requested discovery responses and that he would send Watkins's verification of the responses soon thereafter. Based on Hillman's representation, Allstate informed the court that it did not want to proceed with the motion to compel, so the court issued an order denying it. The court also denied the motion for a protective order filed by Hillman. Allstate relied in good faith on Hillman's promises to provide the responses in a timely manner.

{¶ 57} But contrary to Hillman's representations to Allstate, he did not immediately send any responses. On March 13, the day following the status conference and the call between Hillman and Allstate's counsel, Allstate emailed Hillman to confirm that the discovery responses were forthcoming and to schedule the long-delayed deposition of Watkins. Additionally, Allstate requested that Hillman provide Watkins's verification page within ten days after Hillman's sending the responses to the interrogatories. According to the record before us, Hillman did not respond to Allstate's March 13 email.

{¶ 58} On March 22, Allstate emailed Hillman again, stating that Allstate had not received the discovery responses and asking Hillman to confirm that he would send them within the next seven days and to confirm the status of Watkins's verification of the responses. Allstate again asked Hillman to provide available dates for Watkins's deposition over the following 30 days. Hillman finally replied to Allstate's email on March 28, two weeks after Allstate's first follow-up email, and indicated that he and Watkins were available for the deposition on April 8, 9,

11, or 12. But again, Hillman failed to address the outstanding-discovery issue or Watkins's verification of any responses.

**{¶ 59}** Allstate agreed to schedule the deposition for April 12. In the same email, Allstate advised Hillman *for the third time* that Allstate had yet to receive the discovery responses that Hillman had promised to provide immediately on March 12. Finally, on April 8, *48 days after* the responses were initially due and *almost one month after* Hillman had assured Allstate that the responses would be provided immediately, Allstate received Watkins's responses to its interrogatories and requests for production of documents, but the responses were unverified.

*B. Hillman's delay in providing discovery continued, with some responses being produced over 90 days after the deadline and then only after Hillman was ordered by the court to comply with its discovery orders*

**{¶ 60}** Upon receiving the unverified responses, Allstate emailed Hillman and asked that he provide Watkins's verification by the close of business on April 9, 2019. Hillman did not do so. It was not until April 12, the date of Watkins's deposition, that Hillman first presented Watkins with the verification page so that Watkins could sign it and Hillman could return it to Allstate.

**{¶ 61}** On April 23, Allstate emailed Hillman an Internal Revenue Service Form 4506-T Request for Transcript of Tax Return ("Form 4506-T") and informally asked that Watkins sign and return the form so that Allstate could access Watkins's tax returns for certain years. Allstate attached to the email a letter containing instructions on how to complete the form, including how to fill out the form if Watkins did not file tax returns for the specified years. Allstate also stated that Hillman should advise Allstate if he required a formal discovery request to obtain the release. Allstate attached two subpoenas duces tecum directed to J.P. Morgan Chase and Huntington National Bank relating to Watkins's accounts.

**{¶ 62}** On May 20, because Hillman had not responded to the informal discovery request, Allstate served Hillman by email and regular U.S. mail with its

second requests for production of documents. In the requests, Allstate formally asked that Watkins sign and return the Form 4506-T tax release for years 2012 through 2017 by June 17.

{¶ 63} On June 7, Allstate served Hillman by email and regular U.S. mail with its second set of interrogatories, third requests for production of documents, and a subpoena duces tecum to Benito Canales ("Canales"), a man for whom Watkins had provided caretaking services. The response to the discovery requests was due on July 5, and the information requested in the subpoena to Canales, which pertained to Canales's medical expenses, was due on or before June 24. Canales did not have to appear in person if he provided the requested documents.

{¶ 64} On June 10, Allstate emailed Hillman yet another copy of the subpoena duces tecum. Hillman replied that same day, acknowledging that he had received the subpoena but telling Allstate that Canales could not drive. Hillman further stated that Watkins needed a copy of the Huntington bank materials obtained by Allstate so that Watkins could answer the second set of interrogatories and third requests for production of documents. In response, Allstate emailed Hillman and told him that it had already sent him those documents on May 17; yet Allstate provided them to Hillman a second time. Allstate also inquired as to whether Canales's inability to drive affected his ability to produce the requested medical-expense documents. Hillman never replied.

{¶ 65} On June 11, Hillman served Allstate with a motion for partial summary judgment, but he *did not file* the motion with the court nor tell Allstate that he *was not* going to file the motion. In an abundance of caution, on June 27, Allstate filed a motion to strike Watkins's summary-judgment motion, and on June 28, Allstate filed a memorandum in opposition to the motion. And having still received no response to Allstate's second requests for production of documents, Allstate emailed Hillman on June 19 asking that the documents be provided within ten days. Hillman did not reply to that email or provide the documents by June 29.

**{¶ 66}** On June 27, Allstate sent to Hillman by email certain filings and documents relevant to Watkins's case. Approximately 20 minutes later, Hillman responded to the email, stating that Watkins had advised him that Canales had received paperwork asking him to "come to Cincinnati." Hillman told Allstate that once he "receive[d] what [Allstate had] sent [ to Canales], [Hillman would] review the papers and advise [Allstate] accordingly." Approximately 30 minutes later, Allstate replied to Hillman's email, stating that Canales had probably received the subpoena that Allstate sent to Hillman on June 10.

**{¶ 67}** Still having *received no response* to its second and third requests for production of documents and second set of interrogatories, Allstate emailed Hillman on July 10 and asked that he provide Watkins's responses within seven days and provide Canales's responses within ten days. According to the record before us, Hillman also did not reply to that email. Instead, on July 16, Hillman served Allstate with a copy of another motion for partial summary judgment that Hillman had filed that day. However, the trial court had previously issued an order requiring that all motions for summary judgment in the case be filed by July 1. Allstate therefore filed a motion to strike the motion as untimely, which the court granted.

**{¶ 68}** As of July 25, Hillman still had not provided Allstate with responses to the second and third requests for production of documents and second set of interrogatories. Allstate thus filed a *second* motion to compel discovery and served Hillman with a copy of the motion by email and regular U.S. mail. Hillman did not file a response to the motion. On August 9, the trial court issued an order granting Allstate's second motion to compel, requiring Hillman to respond to Allstate's discovery requests on or before August 23. The court warned, "If such responses [were] not provided [within 14 days of the order], the Court w[ould] award sanctions against [Watkins], up to and including dismissal of all claims [Watkins] has presented in this case, with prejudice."

24

{¶ 69} On August 16, Allstate sent to Hillman a *fourth copy* of Form 4506-T with instructions on how to complete it and indicated that Watkins needed to sign the form even if he did not file tax returns for the specified years. Watkins testified that at some point, Hillman provided him with the form but that Watkins did not know how important it was for him to sign and return it and that had he known, he "would have signed it right away."

{¶ 70} On August 19, Hillman finally responded to Allstate's second set of interrogatories and third requests for production of documents, which had been sent to him in early June. The responses to the interrogatories, however, were again unverified, were in Hillman's handwriting, and primarily stated that Watkins did not know the answers or could not recall them. In addition, Hillman, not Watkins, had signed the Form 4506-T.

{¶ 71} Allstate's counsel emailed Hillman on August 20 and informed him that Allstate considered the responses evasive and incomplete. Allstate's counsel needed the requested information to determine Watkins's financial ability to purchase certain items that he claimed had been lost in the fire. He asked for complete, verified responses by August 23. In response, Hillman provided only barely legible, miniaturized copies of two checks.

*C. Hillman's discovery-delay tactics resulted in the dismissal of his client's case, and his client had no knowledge of the misconduct that had occurred*

{¶ 72} On September 11, 2019, Allstate filed a motion for discovery sanctions asking the court to dismiss Watkins's complaint. Allstate served Hillman with the motion by regular U.S. mail. While the motion was pending, Allstate made an offer to Watkins to resolve the case. Although Hillman advised Watkins of Allstate's offer, he failed to tell Watkins that there was a pending motion to dismiss the case. Watkins rejected Allstate's offer. On October 2, the court issued an order dismissing Watkins's complaint *with prejudice* for failing to comply with the civil

rules pertaining to discovery and failing to comply with the court's discovery orders. The court then ordered Hillman to pay Allstate $1,506 in attorney fees.

{¶ 73} On October 3, the day after the case had already been dismissed, Hillman filed a memorandum opposing any discovery penalties. Allstate also withdrew its settlement offer. On October 4, Hillman sent Watkins a text message saying, "The judge just dismissed us. I will send you the judge's decision. He is wrong and I will appeal." Watkins, understandably shocked, called Hillman but Hillman did not answer. Watkins then went to the courthouse, where he confirmed that his case had been dismissed.

{¶ 74} Within the following week, Watkins received an envelope that Hillman had mailed to him on October 5, 2019. The envelope contained multiple filings, emails, and other paperwork from Watkins's case that Watkins had not previously seen, aside from the Form 4506-T. Watkins immediately decided that he needed to hire new counsel, which he did.

## II. Hillman's misconduct warrants more than a stayed suspension

{¶ 75} The narration of the discovery process in the underlying matter presented above is more detailed than the general outline provided in the majority opinion and sets forth a descriptive and exacting study of a violation of Prof.Cond.R. 3.4(d). Prof.Cond.R. 3.4(d) is clear: "A lawyer shall *not* do any of the following: * * * [I]n pretrial procedure, intentionally or habitually make a frivolous motion or discovery request *or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party*." (Emphasis added.) The above closer look at the facts reveals that Hillman is a lawyer who willfully chose to not respond to discovery requests in a professional manner in a rather basic but high-stakes case.

{¶ 76} And importantly, this is not the first time that Hillman has faced disciplinary action; he has been disciplined three times before. *See In re Attorney Registration Suspension of Hillman*, 123 Ohio St.3d 1475, 2009-Ohio-5786, 915

N.E.3d 1256 ("*In re Hillman I*"); *In re Attorney Registration Suspension of Hillman*, 130 Ohio St.3d 1420, 2011-Ohio-5627, 956 N.E.3d 310 ("*In re Hillman II*"); *Disciplinary Counsel v. Hillman*, 145 Ohio St.3d 489, 2016-Ohio-1172, 50 N.E.3d 539 ("*Hillman*"). Hillman has repeatedly shown either his anathema to meeting deadlines or his inability to meet them. His disciplinary history shows a pattern of his failing to timely file important documents, including his failures to timely register as an attorney, *see In re Hillman I* and *In re Hillman II*, and his failure to file a federal personal income-tax return for 2011, *see Hillman*. In Hillman's most recent disciplinary case, this court suspended him for one year, with the entire suspension stayed on the conditions that he pay his back taxes, pay his current taxes, complete a class in law-office management, and engage in no further misconduct. *Hillman* at ¶ 11.

{¶ 77} And here we are again. Even after taking a class in law-office management, Hillman engaged in further misconduct by mishandling client matters and missing numerous discovery deadlines. Hillman has demonstrated that he cannot effectively manage a case; he failed to make timely, necessary filings in Watkins's case and attempted to hide his shortcomings by deceiving Watkins and opposing counsel. While the majority opinion agrees with the board that Hillman lacked a dishonest or selfish motive, based on all the facts in the record, I am not so sure. But even if Hillman did not have a dishonest or selfish motive, the record before us combined with Hillman's disciplinary history indicates that an actual suspension is necessary to protect the public. A lawyer who has repeatedly failed to meet deadlines and who has not shown that he can presently meet them is a continuing danger to his clients and the public.

{¶ 78} The board recommends that we impose a two-year suspension with the entire suspension stayed on the conditions that Hillman engage in no further misconduct and pay the costs of these proceedings. In reaching that recommendation, the board identified three cases in which lawyers were given

actual suspensions from the practice of law for misconduct similar to that at issue in this case. *See Cleveland Metro Bar Assn. v. Bancsi*, 141 Ohio St.3d 457, 2014-Ohio 5255, 25 N.E.3d 1018, ¶ 5-10, 19; *Dayton Bar Assn. v. Scaccia*, 150 Ohio St.3d 385, 2016-Ohio-3299, 79 N.E.3d 506, ¶ 10, 22; *Disciplinary Counsel v. Engel*, 154 Ohio St.3d 209, 2018-Ohio-2988, 113 N.E.3d 481, ¶ 6-8, 31. But the board distinguished those cases from this case, focusing on the fact that Hillman's prior disciplinary actions did not involve client-related misconduct.

{¶ 79} While I agree with the board that Hillman's prior misconduct did not affect his clients, his noncompliance with the rules and the law shows a pattern of his inability to meet important deadlines that could, and in this case obviously did, affect a vulnerable client. This pattern of misconduct, if not remedied, will harm Hillman's future clients. The aggravating factors present here—Hillman's three prior suspensions, his long history of missed personal or professional deadlines, and the egregious facts of this case, which include Hillman's harming his vulnerable client—indicate that Hillman is the type of lawyer who conceals his inaptitude by playing "discovery games" and then hides that misconduct by not informing the affected client of the discovery violations and the consequential orders of the court. Therefore, while Hillman's prior misconduct does not weigh so heavily as to warrant a suspension that includes no stayed portion, I cannot agree that a fully stayed suspension is appropriate. I believe that Hillman's misconduct warrants, at the very least, a two-year suspension with only 18 months stayed. *See Engel* at ¶ 26-30. In the alternative, I believe that this court should impose the stayed one-year suspension from Hillman's most recent prior disciplinary case because he has certainly engaged in further misconduct. *See Hillman*, 145 Ohio St.3d 489, 2016-Ohio-1172, 50 N.E.3d 539, at ¶ 11.

{¶ 80} Not only is an actual suspension warranted under our caselaw, but it is also necessary to protect the public and to deter other lawyers from engaging in

the same type of misconduct. All lawyers should know that abusing the discovery rules through a lack of reasonable diligence is a violation of Prof.Cond.R. 3.4(d).

{¶ 81} Discovery games such as those that Hillman engaged in harm the public by obligating the judicial system to use its time and resources to resolve avoidable discovery disputes caused by the offending lawyer's dilatory behavior, whether that behavior was purposeful or due to the lawyer's incompetence. Not only do such actions waste the courts' resources, but they also waste the time and resources of opposing counsel and their clients. The type of gamesmanship exhibited by Hillman is what the public might expect to see from a "crooked lawyer" in a "soap opera." That type of behavior is unacceptable. The majority opinion's decision to not impose an actual suspension to protect the public from the sort of gamesmanship that Hillman engaged in provides a green light for lawyers to play discovery games in civil cases throughout Ohio.

### III. Conclusion

{¶ 82} I concur in the portion of the majority opinion's decision adopting the board's findings and in the majority opinion's conclusions regarding the violations that Hillman committed. But for the reasons stated above, I must respectfully dissent from its decision regarding the sanction imposed. A sanction that includes an actual suspension is necessary to protect the public from an attorney who has had multiple prior disciplinary sanctions and who has exhibited a disregard for court orders and professionalism by choosing to engage in gamesmanship through unnecessary delay, silence, evasion, and ignoring the rules pertaining to discovery in civil cases. Also, the conditions for Hillman's return to the practice of law should include his completion of 12 hours of continuing legal education ("CLE") on the topic of law-office management, in addition to the normal CLE requirements under Gov.Bar R. X. I would also require Hillman to work with an appointed monitoring attorney during any stayed portion of his suspension, with

the monitoring attorney focusing on Hillman's time management and law-office organization and management.

**{¶ 83}** The type of gamesmanship illustrated by Hillman in this case is one of the main reasons why more and more litigants do not trust the judicial system to resolve their disputes. By not imposing a more severe sanction on Hillman, this court essentially ignores one lawyer's misconduct that is representative of a more pervasive issue and simply says, "Bad lawyering in civil cases in Ohio is okay." I cannot agree with that message. Therefore, I respectfully concur in part and dissent in part.

O'CONNOR, C.J., concurs in the foregoing opinion.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Karen H. Osmond and Kelli C. Schmidt, Assistant Disciplinary Counsel, for relator.

Steven E. Hillman, pro se.

_____